## UNITED STATES BANKRUPTCY COURT FOR THE
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| | CASE NO.: 10-05566-D |
| George Walter Fisette, | |
| | NOTICE OF MOTION SEEKING |
| Debtor(s). | 11 U.S.C. §362(d) RELIEF |

311671-01085

TO:    DEBTOR, DEBTOR'S ATTORNEY, TRUSTEE, AND THOSE NAMED IN THE ATTACHED MOTION

PLEASE TAKE NOTICE THAT ON **January 18, 2011 at 10:30am** at 145 King Street, Room 225, Charleston, SC, a hearing will be held on the attached Motion.

Within fourteen (14) days after service of the attached Motion, and the Notice of Motion, the Movant's Certification of Facts, (and a blank Certification of Facts form, applicable only to motions for relief from the automatic stay and for service on *pro se* parties only), any party objecting to the relief sought shall:

1)    File with the Clerk of this Court a written objection to the 11 U.S.C § 362 Motion;

2)    File with the Clerk of this Court a Certification of Facts (for motions for relief from the automatic stay;

3)    Serve on the movant items 1 & 2 above at the address shown below; and

4)    File a certificate of such service with the Court.

If you fail to comply with this procedure, you may be denied the opportunity to appear and be heard on this proceeding before the Court.

DATE OF ISSUANCE:        December 16, 2010

MOVANT:        JPMorgan Chase Bank, National Association

ATTORNEY:        Samuel C. Waters, ID #4539
Cheryl H. Fisher, ID #7451
Reginald P. Corley, ID #7832
Jennifer W. Rubin, ID #7540
Mary R. Powers (I.D. 9121)
William S. Koehler (I.D. 9912)

ATTORNEY'S ADDRESS:        P.O. Box 100200
Columbia, SC  29202
(803) 744-4444

TO:    PARTY FILING MOTION FOR RELIEF FROM AUTOMATIC STAY (11 U.S.C. §362)

Please refer to Federal Rules of Bankruptcy Procedure 4001(a) for specifics of your responsibilities for service and filing of documents, including the above notice of hearing, related to your motion for relief from the automatic stay (11 U.S.C. §362).

Please note that Local Rule 4001 provides for any party failing to comply with the procedures specified in the rule to be denied the opportunity to appear and be heard before the court and to the subject to sanctions pursuant to Local Rule 9011.

UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>George Walter Fisette,<br>       Debtor(s). | CHAPTER 11<br>CASE NO.: 10-05566-D<br><br>MOTION TO MODIFY STAY |

311671-01085

  JPMorgan Chase Bank, National Association (hereafter called "Movant") hereby moves for relief

from the automatic stay of 11 U.S.C. §362(a), by modification of the stay as to Movant's collateral, on the

following grounds:

  1.  This Court has jurisdiction of this proceedings under 28 U.S.C. §157(b)(2)(G).

  2.  Debtor filed for relief under Chapter 13 of the U.S. Bankruptcy Code on August 3, 2010

The case was converted to a Chapter 11 on November 4, 2010.

  3.  Movant is the holder of a lien against the Debtor in the aggregate amount of $626,507.87,

plus interest, attorney fees and costs and secured by a mortgage; a copy of Movant's note and mortgage is

attached.

  4.  Debtor's Chapter 11 Disclosure Statement and proposed Plan have not yet been filed.

  5.  Debtor has failed to make the regular monthly payments as of October 1, 2005 forward,

constituting cause for modification of the stay of 11 U.S.C. §362(a), pursuant to 11 U.S.C. §362(d)( 1).

  6.  Movant is informed and believes that Debtor is using the collateral without providing

adequate protection to Movant, as required by 11 U.S.C. §362(d)(1) and 363(e).

  7.  Movant believes the subject property is not necessary for an effective reorganization.

  8.  Movant is informed and believes that debtor is in default under the terms of said plan and

disclosure statement; that there is not adequate protection for its mortgage lien; and that the automatic

stay provision of §362 of the Bankruptcy Code should be modified as to the subject property to allow

Movant or its assigns to foreclose its Note and Mortgage in State Court, and as to the Debtor to allow

Movant to provide Debtor with any notices and pleadings regarding the State Court foreclosure action as required by the said mortgage documents or as otherwise required by law.

8       Movant agrees to waive any claim that may arise under 11 U.S.C. §503(b) or 507(b) as a result of this Order. The claimant further agrees that any funds realized from the foreclosure sale, in excess of all liens, costs and expenses will be paid to the Trustee.

WHEREFORE Movant prays:

1.       The stay pursuant to 11 U.S.C 362(d) be modified to permit Movant to pursue any state court remedies under its mortgage on the above-mentioned property, including sending any required notice;

2.       The attorney's fees and costs in the amount of $950.00 or such additional amounts as the Court finds reasonable and be granted; and

3.       The Court orders such other relief as may be just and proper.

/s/ Mary R. Powers
Samuel C. Waters (I.D. 4539)
Cheryl H. Fisher (I.D. 7451)
Reginald P. Corley (I.D. 7832)
Jennifer W. Rubin (I.D. 7540)
Michael P. Morris (I.D. 9698)
Mary R. Powers (I.D. 9121)
William S. Koehler (I.D. 9912)
Attorneys for Movant
Rogers Townsend & Thomas, PC
220 Executive Center Drive, Suite 109 (29210)
Post Office Box 100200
Columbia, South Carolina 29202
(803) 744-4444

Columbia, South Carolina
December 16, 2010

UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF SOUTH CAROLINA

| IN RE: | | CHAPTER 11 |
|---|---|---|
| | | CASE NO.: 10-05566-D |
| George Walter Fisette, | | |
| | Debtor(s). | CERTIFICATION OF FACTS |

In the above-entitled proceeding, in which relief is sought by JPMorgan Chase Bank, National Association from the automatic stay in accordance with 11 U.S.C Section 362, I do hereby certify to the best of my knowledge the following:

1. Nature of Movant's Interest:
   Secured.

2. Brief Description of Security Interest, copy attached (if applicable):
   Note and Mortgage.

3. Description of Property Encumbered by Stay (Include serial number, lot and block number, etc.):
   43 Mary Street, Charleston in Charleston County, South Carolina - TMS# 459-09-03-122

4. Basis for Relief (property not necessary for reorganization, debtor has no equity, property not property of estate, etc.; include applicable subsection of Section 362):
   11 U.S.C. §362(d)1 and (d)2

5. Prior Adjudication of Other Courts, copy attached, (Decree of foreclosure, Order of possession, Levy of execution, etc., if applicable):
   N/A

6. Valuation of Property, copy of valuation attached (Appraisal, Blue Book, etc.):

   | | | |
   |---|---|---|
   | Fair Market Value | TBD | Movant is getting an appraisal |
   | Liens (Mortgages) | $626,507.87 | Payoff as of 11/10/10 |
   | Other: | $0.00 | |
   | Debtor Exemption (-) | $0.00 | |
   | | | |
   | Net Equity | $0.00 | |
   | Source/Basis of Value | Debtor's Schedules | |
   | If Appraisal: | | |
   | Date of Appraisal | | |
   | Type of Appraisal | | |
   | Name of Appraiser | | |
   | Address of Appraiser | | |

7. Amount of debtor's estimated equity (using figures from paragraph 6, supra):
   $0.00

8. Month and Year in Which First Direct Post-petition Payment Came Due to Movant (if applicable).
   N/A

   (a) For Movant/Lienholder (if applicable): List or attach a list of all post-petition payments received directly from debtor(s), clearly showing date received, amount, and month and year for which each such payment was applied.
   None.

   (b) For Objecting Party (if applicable): List or attach a list of all post-petition payments included in the Movant's list from (a) above which objecting party disputes as having been made. Attach written proof of such payment(s) or a statement as to why such proof is not available at the time of filing this objection.

9. Month and Year for Which Post-petition Account of Debtor(s) is Due as of the Date of this Motion:
   October, 2005

/s/ Mary R. Powers
Samuel C. Waters, ID #4539
Cheryl H. Fisher, ID #7451
Reginald P. Corley, ID #7832
Jennifer W. Rubin, ID #7540
Mary R. Powers (I.D. 9121)
William S. Koehler (I.D. 9912)
Attorney for Movant
Post Office Box 100200
Columbia, SC  29202-3200
(803) 744-4444

Dated: December 16, 2010

UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF SOUTH CAROLINA

IN RE:

George Walter Fisette,

                                    Debtor(s).

311671-01085

CHAPTER 11
CASE NO.: 10-05566-D

<u>CERTIFICATE OF SERVICE</u>

 

      I, the undersigned employee of ROGERS TOWNSEND & THOMAS, PC, do hereby

certify that a copy of the Notice of Motion Seeking Relief, Motion to Modify Stay and

Certification of Facts were mailed to the parties listed below:

George Walter Fisette
517 King Street #11
Charleston, SC 29403

D. Nathan Davis, Esquire
711-A St. Andrews Blvd.
Charleston, SC  29407

US Trustee's Office
Strom Thurmond Federal Building
1835 Assembly Street, Suite 953
Columbia, SC 29201

Attached List of Creditors Holding 20 Largest Unsecured Claims


             /s/ Shirley Cope
             ROGERS TOWNSEND & THOMAS, PC
             Shirley Cope, Bankruptcy Paralegal
             Post Office Box 100200
             Columbia, SC  29202-3200
             (803) 744-4444

Columbia, South Carolina
December 16, 2010

B4 (Official Form 4) (12/07)

**United States Bankruptcy Court**

**District of South Carolina**

In re  **George Walter Fisette**                                                    ,   Case No.  **10-05566-jw**
                                              Debtor                                      Chapter  **11**

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed or subject to setoff | (5) Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| JP Morgan Chase d/b/a Washington Mutual<br>PO Box 44118<br>Jacksonville, FL  32231-4016 | | Mortgage | | $132,056.00<br><br>SECURED VALUE:<br>$350,000.00 |
| Helen Fisette<br>550 Cedar Ridge Road<br>Shallotte, NC  28470 | | | | $7,500.00 |
| Welch, Roberts & Amburn<br>157 East Bay St<br>Charleston SC 29401 | | | | $5,981.00 |
| Kent Zhang<br>857 Madison St, 1st Floor<br>Brooklyn, NY  11221 | | | | $4,250.00 |
| Wendi M Freeman, LLC<br>1040 eWall Street<br>Mt Pleasant, SC  29464-3046 | | | | $2,888.94 |
| Farer & Schwartz, PC<br>12 Century Hill Drive<br>Latham, NY  12110 | | | | $2,534.59 |

B4 (Official Form 4) (12/07)4 -Cont.

In re  **George Walter Fisette**                                          , Case No.  **10-05566-jw**
                              Debtor                          Chapter  **11**

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

| (1)<br>*Name of creditor and complete mailing address including zip code* | (2)<br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br>*Indicate if claim is contingent, unliquidated, disputed or subject to setoff* | (5)<br>*Amount of claim [if secured also state value of security]* |
|---|---|---|---|---|
| **Buist Byars & Taylor, LLC**<br>**652 Coleman Blvd, Ste 200**<br>**Mt. Pleasant, SC  29464** | | | | $2,454.62 |
| **Baker Hostetler**<br>**PO Box 70189**<br>**Cleveland, OH  44190-0189** | | | | $1.294.00 |
| **Comcast Cable**<br>**PO Box 105184**<br>**Atlanta, GA  30348-5184** | | | | $570.46 |
| **SCE&G**<br>**PO Box 10255**<br>**Columbia, SC  29202-3255** | | | | $534.12 |
| **Charleston Water Systems (fka CPW)**<br>**PO Box 568**<br>**Charleston, SC  29402** | | | | $494.43 |
| **RMS**<br>**4836 Brecksville Rd**<br>**P.O. Box 523**<br>**Richfield OH 44286** | | | | $451.07 |

B4 (Official Form 4) (12/07)4 -Cont.

In re  **George Walter Fisette**                                                   , Case No.  **10-05566-jw**

                                                    Debtor                    Chapter   **11**

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

| (1)<br>*Name of creditor and complete mailing address including zip code* | (2)<br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br>*Indicate if claim is contingent, unliquidated, disputed or subject to setoff* | (5)<br>*Amount of claim [if secured also state value of security]* |
|---|---|---|---|---|
| **Chase Auto Finance**<br>**PO Box 78050**<br>**Phoenix, AZ  85062-8050** | Security Agreement | | | **$426.00**<br><br>**SECURED VALUE:**<br>**$12,000.00** |
| **University Medical Associates**<br>**1 Poston Rd, Ste 350**<br>**Charleston SC 29407-3431** | | | | **$413.00** |
| **CBHV**<br>**PO Box 3495**<br>**Toledo OH 43607** | | | | **$223.35** |
| **Dish Network**<br>**PO Box 105169**<br>**Atlanta, GA  30348-5169** | | **DISPUTED** | | **$171.89** |
| **New York State Thruway Authority**<br>**PO Box 15187**<br>**Albany, NY  12212-5187** | | | | **$122.93** |
| **NYC Dept of Finance**<br>**PO Box 3674**<br>**New York, NY  10008-3674** | | | | **$75.00** |

B4 (Official Form 4) (12/07)4 -Cont.

In re  **George Walter Fisette**                                    ,    Case No.  **10-05566-jw**

                                        Debtor          Chapter    **11**

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

| (1) | (2) | (3) | (4) | (5) |
|-----|-----|-----|-----|-----|
| Name of creditor and complete mailing address including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed or subject to setoff | Amount of claim [if secured also state value of security] |

**Cablevision**
PO Box 371378
Pittsburgh, PA  15250-7378                                                                              **$55.66**


**Office of the Parking Clerk**
PO Box 9102
Somerville, MA  02143                                                                                   **$50.00**


Penalty for making a false statement or concealing property. Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C §§ 152 and 3571.



# ADJUSTABLE RATE NOTE
## (12-MTA Index - Payment and Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN 125%** OF THE ORIGINAL AMOUNT (OR $ **518,750.00** ). **MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.**

**FEBRUARY 23, 2004** _____ _____**Charleston**_____ _____**SOUTH CAROLINA**_____
(City)                                          (State)

**43 Mary Street, Charleston, South Carolina 29403**_____
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **415,000.00** plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Washington Mutual Bank, FA** . I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount has been paid. Up until the first day of the calendar month that immediately precedes the first payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of **3.894** %. Thereafter until the first Change Date (as defined in Section 4 of this Note) I will pay interest at a yearly rate of **1.250** %. The interest rate required by this Section 2 and Section 4 of this Note is the Rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making payments every month. In this Note, "payments" refer to Principal and interest payments only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I will make my monthly payments on **1st** day of each month beginning on **APRIL, 2004** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on **MARCH 1, 2034** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at **9451 Corbin Avenue, Northridge,** **California 91324** , or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $**1,382.99** , unless adjusted at an earlier time under Section 4(H) of this Note.

*DocMagic eForms 800-649-1362*
*www.docmagic.com*

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may further change on the ___1st___ day of ___APRIL, 2004___ , and on that day every month thereafter. Each such day is called a "Change Date".

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of 15 days before each Interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding ___TWO AND 650/1000___ percentage points ___2.650___ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(8), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than ___NINE AND 950/1000___ percentage points ___9.950___ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing ___APRIL 1, 2005___ , and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of this Note.

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying. This payment cap applies only to the principal payment and does not apply to any escrow payments Lender may require under the Security Instrument.



**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to _____125%_____ of the principal amount original borrowed. In the event my unpaid Principal would otherwise exceed that _____125%_____ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the __5th___ anniversary of the due date of the first monthly payment, and on that same day every __FIFTH__ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted

limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**Miscellaneous Fees:** I understand that the Note Holder will also charge a return item charge in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. The current fee is $ __15.00__ . Lender reserves the right to change the fee from time to time without notice except as may be required by law.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of __FIFTEEN__ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__ % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given the Borrower).

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

DocMagic EForms 800-649-1362
www.docmagic.com

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

GEORGE W FISETTE

GEORGE FISETTE

DocMagic EForms 800-649-1362
www.docmagic.com

## Prepayment Fee Note Addendum

This Note Addendum is made this __23rd__ day of __FEBRUARY, 2004__ and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") in favor of __Washington Mutual Bank, FA__ (the "Lender") and dated as of even date herewith (the "Note").

This Note Addendum amends the provision in the Note regarding the Borrower's right to prepay as follows:

**BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the first anniversary of the date of the Note, the Prepayment Fee shall be equal to __TWO__ percent ( __2.000__ %) of the original loan amount. Thereafter, prepayment of the Note shall be permitted without any Prepayment Fee.

The Prepayment Fee shall be payable upon a full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

DocMagic eForms  800-649-1362
www.docmagic.com

**NOTICE TO THE BORROWER**

Do not sign this Note Addendum before you read it.  This Note Addendum provides for the payment of a Prepayment Fee if you wish to repay the loan prior to the date provided for repayment in the Note.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Note Addendum.


_____          _____
GEORGE W FISETTE                             GEORGE FISETTE


_____          _____


_____          _____

4387 (08-01)

DocMagic EForms  800-649-1362
www.docmagic.com



**AFTER RECORDING RETURN TO:**

Washington Mutual Bank, FA
C/O ACS Image Solutions
12691 Pala Drive MS156DPCA
Garden Grove, California 92841

BKH   555PG304

——————— [Space Above This Line For Recording Data] ———————

# MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated    FEBRUARY 23, 2004    , together with all Riders to this document.
(B)  "Borrower" is George Pisette *

Borrower is the mortgagor under this Security Instrument.
(C)  "Lender" is Washington Mutual Bank, FA, a federal association    .
Lender is a BANK                                    organized and existing under the laws
of THE UNITED STATES OF AMERICA                    . Lender's address is:
400 East Main Street, Stockton, California 95290
Lender is the mortgagee under this Security Instrument.
(D)  "Note" means the promissory note signed by Borrower and dated    FEBRUARY 23, 2004.
The Note states that Borrower owes Lender FOUR HUNDRED FIFTEEN THOUSAND AND 00/100

Dollars (U.S. $415,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    MARCH 1, 2034    .
(E)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(F)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G)  "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

DocMagic CForms  800-649-1362
www.docmagic.com

BKH   555PG305

- [X] Adjustable Rate Rider
- [ ] Graduated Payment Rider
- [ ] Balloon Rider
- [ ] Other(s) [specify]

- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Rate Improvement Rider

- [ ] 1-4 Family Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider

(H)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K)  "Escrow Items" means those items that are described in Section 3.

(L)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds, whether by way of judgment, settlement or otherwise, paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note;  (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note;  and (iii) the performance of all agreements of Borrower to pay fees and charges arising out of the Loan whether or not herein set forth.  For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns the following described property located in CHARLESTON _____ County, South Carolina;

SOUTH CAROLINA
4384SC (02-01)

DocMagic eForms 800-649-1362
www.docmagic.com

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART OF HEREOF.

BKH  555PG306

which currently has the address of  43 Mary Street

[Street]

Charleston                    , South Carolina    29403         ("Property Address"):
[City]                                            [Zip Code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one of more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan

SOUTH CAROLINA
41B48C 02-01)                    Page 3 of 15                    DocMagic eForms 800-549-1362
                                                                www.docmagic.com

BKH 555PG317

use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substance in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use, or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.   Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.   Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies.   Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence, all of which shall be additional sums secured by this Security Instrument. If Borrower or any Successor in Interest to Borrower files (or has filed against Borrower or any Successor in Interest to Borrower) a bankruptcy petition under Title 11 or any successor title of the United States Code which provides for the curing of prepetition default due on the Note, interest at a rate determined by the Court Shall be paid to Lender on post-petition arrears.

23. Release.  Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall release this Security Instrument.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Homestead Waiver.  Borrower waives all rights of homestead exemption in the Property to the extent allowed by Applicable Law.

25. Waiver of Appraisal Rights.  The laws of South Carolina provide that in any real estate foreclosure proceedings a defendant against whom a personal judgment is taken or asked may within 30 days after the sale of the mortgaged property apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. TO THE EXTENT PERMITTED BY LAW, THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY

SOUTH CAROLINA
41046C 102-01)                          Page 14 of 15                          DocMagic eForms 800-649-1362
                                                                              www.docmagic.com

BKH 555PG318

****I, George W. Fisette, acknowledge and agree that the original mortgage for this
subject loan was duly and properly executed by me on February 23, 2004; however,
subsequent to the execution of said document the original mortgage was lost or
misplaced. By my signature below I acknowledge and agree that this attached copy of the
original mortgage shall be binding upon me and have the full force and affect of the
original mortgage. I also agree that this copy with the newly attached signature page shall
be recorded in lieu of the original with an effective date of February 23, 2004, in order to
establish a Mortgage lien of record. since the debt has not been paid off or satisfied.

APPRAISED VALUE OF THE MORTGAGED PROPERTY. This waiver shall not
apply so long as the Property is used as a dwelling place as defined in Section 12-37-250
of the South Carolina Code of Laws.

26. Future Advances.     The lien of this Security Instrument shall secure the
existing indebtedness under the Note and any future advance made under this Security
Instrument up to 160% of the original principal amount of the Note plus interest thereon,
attorney's fees and court costs.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants
contained in this Security Instrument and in any Rider executed by Borrower and
recorded with it.

Witness:                          Witness:


AKA   GEORGE W. FISETTE


State of South Carolina
County of Charleston

Personally appeared before me _the first witness_ and made oath that he/she
saw the within named borrower sign, seal, and as his/her/their act and deed, deliver the
within written mortgage: and that he/she with _other witness_ , witnessed the
execution thereof.


SWORN to before me this
30 day of ___, 2005.


NOTARY PUBLIC     SC
My commission expires: 5-22-

EXHIBIT "A"        BKH· 555PG319

ALL that piece, parcel or tract of land, with the buildings thereon, situate, lying and being on the south side of Mary Street in the City of Charleston and State of South Carolina, being forth lot west of Elizabeth Street.

MEASURING AND CONTAINING on the front and back lines Forty-Nine (49') feet by one hundred Seventeen (117') fee in depth, be the same more or less.

BUTTING and bounding north by Mary Street, east by lands now or late of Massot, south by lands now or late of William Aiken, west on lands now or late of James Murphy.

BEING the same property conveyed to the Mortgagor by Deed of Helen M. Davis, dated August 31, 2001 and recorded in the Charleston County RMC Office, in Deed Book B-382, page 871.

BKH 555PG320

# RECORDER'S PAGE

**NOTE**: This page MUST remain
with the original document



Filed By:

Weston Adams Law Firm
1501 Richland St.
PO Box 291
Columbia            SC 29202

**FILED**

September 26, 2005

2:13:13 PM

BKH 555PG304

Charlie Lybrand, Register
Charleston County, SC

| DESCRIPTION | AMOUNT |
|---|---|
|  | $ 22.00 |
|  |  |
|  |  |
| Postage |  |

| TOTAL | $ 22.00 |
|---|---|

DRAWER:

| | C - slw |
|---|---|

DO NOT STAMP BELOW THIS LINE

843-958-4800   101 MEETING STREET   CHARLESTON, SC 29401   www.charlestoncounty.org