## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

|  |  |  |
|---|---|---|
| | ) | |
| In re: George Walter Fisette | ) | Case Number: 10-05566-dd |
| Debtor | ) | |
| | ) | |
| | ) | Small Business Case Under Chapter 11 |

## GEORGE WALTER FISETTE'S DISCLOSURE STATEMENT. DATED February 1, 2011

### *Table of Contents*

I. Introduction
    A.    Purpose of this document
    B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing
    C.    Disclaimer

II.    BACKGROUND

    A.    Description and History of the Debtor's Business
    B**.**    Insiders of the Debtor
    C.    Management of the Debtor Before and During the Bankruptcy
    D.    Events Leading to Chapter 11 Filing
    E.    Significant Events During the Bankruptcy Case
    F.    Projected Recovery of Avoidable Transfers
    G.    Claims Objections
    H.    Current and Historical Financial Conditions

III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

    A.    What is the purpose of the Plan of Reorganization?
    B.    Unclassified Claims
        1.    *Administrative Expenses*
        2.    *Priority Tax Claims*
    C.    Classes of Claims and Equity Interests
        1.    *Classes of Secured Claims*
        2.    *Classes of Priority Unsecured Claims*
        3.    *Classes of General Unsecured Claims*
        4.    *Classes if Equity Interest Holders*
    D.    Means of Implementing the Plan

        1.    *Source of Payments*

2.      *Deadline for Voting to Accept or Reject the Plan*

E.      Risk Factors
F.      Executory Contracts and Unexpired Leases
G.      Tax Consequences of the Plan
H.      Current and Historical Financial Conditions

IV.   CONFIRMATION REQUIREMENTS AND PROCEDURES

A.      Who May Vote or Object
        1.      *What is an Allowed Claim or an Allowed Equity Interest?*
        2.      *What Is an Impaired Claim or Impaired Equity Interest?*
        3.      *Who is **Not** Entitled to Vote?*
        4.      *Who Can Vote in More Than One Class*

B.      Votes Necessary to Confirm the Plan
        1.      *Votes Necessary for a Class to Accept the Plan*
        2.      *Treatment of Nonaccepting Classes*
C.      Liquidation Analysis
D.      Feasibility
        1.      *Ability to Initially Fund a Plan*
        2.      *Ability to Make Future Plan Payments And Operate Without Further
                Reorganization*

V.    EFFECT OF CONFIRMATION OF PLAN

A.      DISCHARGE OF DEBTOR
B.      Modification of Plan
C.      Final decree

VI.   OTHER PLAN PROVISIONS - NONE

I.      **INTRODUCTION**

        This is the Disclosure Statement (the "Disclosure Statement") in the small business
chapter 11 case of George Walter Fisette (the "Debtor").  This Disclosure Statement contains
information about the Debtor and describes the Plan filed by George Walter Fisette on February
1, 2011.  A full copy of the Plan is attached to this Disclosure Statement as Exhibit A.  ***Your
rights may be affected.  You should read the Plan and this Disclosure Statement carefully and
discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.***

        The proposed distributions under the Plan are discussed to unsecured creditors are in the
attachment to this Disclosure Statement.  General unsecured creditors are classified in Class 3
and Class 4, and will receive a distribution of 2 % of their allowed claims, to be distributed as
follows:  .See Attachment setting forth disbursements

A.    **Purpose of This Document**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why George Walter Fisette believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

B.    **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.    *Time and Place of the hearing to finally approve this Disclosure Statement and confirm the Plan will be as shown on a notice that you are receiving.*

The hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan will take place as shown on a separate notice issued by the Court and served upon you as directed by the Court.

2.    *Deadline for Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the ballot in the enclosed envelope as directed in that notice.

Your ballot must be received by the date given to you by a notice issued by the Court or it will not be counted.

3.    *Deadline for Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon D. Nathan Davis by the date specified in the notice issued by the

Court..

4.      *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact

> D. Nathan Davis
> Davis Law Firm
> 711-A St. Andrews Blvd
> Charleston, SC  29407
> 843-571-4042
> Nathan@davislawsc.com

C.      Disclaimer

The Court has not conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgement about its terms.  The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. The Court's approval of this Disclosure Statement is subject to final approval at the hearing to be set by the Court of which you will or are receiving notice for the confirmation of the Plan. Objections to the adequacy of this Disclosure Statement may be filed until the date set by the Court.

## II.    BACKGROUND

### A.      Description and History of the Debtor's Business

The Debtor is an individual who until just prior to the filing of this case had been a developer of real estate.  This business had become unprofitable and debtor had not earned income in several years from such endeavors.  Debtor had been living off of loans from friends and had not been paying the majority of his debts.  The Debtor is now in the business of event promotions and has lined up an almost monthly list of events over this year.  Debtor believes that he will be able to continue this business and make money from its operation for the foreseeable future.  The debtor has further been embroiled in litigation with JP Morgan Chase Bank which took a great deal of the time and energy of the debtor.

### B.      Insiders of the Debtor

Debtor is the only person who could be considered an insider.

### C.      Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") George Walter Fisette. .

The managers of the Debtor during the Debtor's chapter 11 case have been:
George Walter Fisette

Debtor will continue to operate his business.

### D.    Events Leading to Chapter 11 Filing

The debtor was a victim of the recession that has plagued this country and destroyed the business of the debtor.  Debtor found it very difficult to rebuild or to obtain other employment as he was probably believing that this nightmare would end quickly.   Debtor was unable to pay his bills and became embroiled with litigation with what is now known as JP Morgan/Chase Bank. This litigation was carried on in both the State of New York and South Carolina.  A real property located in New York was foreclosed on and the property on Mary Street in Charleston was nearly lost.  At the time of filing, debtor was living in an apartment in Charleston and renting out part of the Mary Street property.  The remaining part was simply not habitable for debtor.

### E.    Significant Events During the Bankruptcy Case

•    D. Nathan Davis is the only professional employed by debtor during this case.
•    Describe adversary proceedings that have been filed or other significant litigation that has occurred
•    Just prior to the filing of this case, the debtor found employment and has begun doing event promotions.  This has turned into a business that is paying debtor regularly and it appears that this business will, over the years, grow.  Debtor's income has gone from almost nothing to making money and debtor has shown that he can now make money and fund a plan of reorganziation.
•    A valuation motion was filed to value the Mary Street property and after review of the property by both sides, an agreed value of $350,000.00 was reached. Debtor has entered into an adequate protection order which is being circulated to the parties in interest at this time.

### F.    Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidable actions as none have been identified, but, this may change as debtor continues a review of his situation.

| Transaction | Defendant | Amount Claimed |
|---|---|---|
| none | | |

| | | |
|---|---|---|

The Debtor has not yet completed its investigation with regard to prepetition transactions. If you received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Code, the Debtor may seek to avoid such transfer.

### G.    Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in Article V of the Plan.

### H.    Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in Exhibit B.

The most recent post-petition operating report filed since the commencement of the debtor's bankruptcy case are set forth in Exhibit D.

## III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    What is the purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interest in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests in impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

The purpose of the plan is to allow the debtor to save his real property located in Charleston, South Carolina and also to pay to his creditors some of the money that he owes to them.

### B.    Unclassified Claims

Certain types of claims are automatically entitled to specific treatment of the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has *not* placed the following claims in any class:

1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | none | Paid in full on the effective date of the Plan, or according to terms of obligation, if later. |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | none | Paid in full on the effective date if the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court | amount unknown | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | 1,039.00 | Paid in full on the effective date of the Plan |
| Other Administrative Expenses | none | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | $325.00 | Paid in full on the effective date of the Plan |
| TOTAL | $1,364.00 | |

2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a

period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| None | | | Pmt interval           = <br> Monthly Payment   = <br> Begin Date            = <br> End Date              = <br> Interest Rate %      = <br> Total Payout amount  =$ |
| None | | | Pmt interval           = <br> Monthly Payment   = <br> Begin Date            = <br> End Date              = <br> Interest Rate %      = <br> Total Payout amount  =$ |

**C.      Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.      *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoff securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 2.A | *Secured claim of:*<br>Name = JP Morgan Chase Bank<br>Collateral description = 43 Mary Street, Charleston SC<br>Allowed Secured Amount = $350,000.00<br>Priority of Lien = Paid as secured.<br>Principal owed = $350,000.00<br>Pre-pet. arrearage = Mortgage valued.<br>Total claim = $350,000.00 | | | Monthly Pmt = $1,933.00<br>Pmts Begin = January 20, 2011<br>Pmts End = January 20, 2019<br>Balloon Pmt = None<br>Interest rate % = 5.25<br>Treatment of Lien = Mortgage valued at $350,000.00 and paid as secured.<br>Additional payment required to cure defaults = None |
| 2.B | *Secured claim of:*<br>Name = Chase Auto Finance<br>Collateral description = 2006 Dodge Ram<br>Allowed Secured Amount = $12,368.89<br>Priority of Lien = Paid as secured.<br>Principal owed = $12,368.89<br>Pre-pet. arrearage = None<br>Total claim = $12,368.89 | | | Monthly Pmt = $234.84<br>Pmts Begin = Payments begin one month after confirmation.<br>Pmts End = 61 months after confirmation<br>Balloon Pmt = None<br>Interest rate % = 5.25<br>Treatment of Lien = Paid as secured<br>Additional payment required to cure defaults = None |

2.    *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6) and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6) and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| None | Priority unsecured claim pursuant to Section<br><br>Total amt of claims = | | |
| None | Priority unsecured claim pursuant to Section<br><br>Total amt of claims = | | |

3.    *Classes of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class(es) 1 through 3, which contain general unsecured claims against the Debtor.

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 2-C | Deficiency Balance on 43 Mary Street- Claimed amount is $601,141.01. Mortgage has been valued at $350,000.00. | | $251,141.01 x 0.05= $12,557.05 \ 72 months= $174.40 |
| 2.D | General Unsecured Class<br><br>(See unsecured payout list) | | Monthly Pmt      =<br>Pmts Begin       =<br>Pmts Ends        =<br>Balloon Pmt      =<br>Int rate % from    =<br>date<br>Est % of claim pd  = |

4.    *Classes if Equity Interest Holders*   N/A

The following chart sets forth the Plan's proposed treatment of the classes of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| N/A | Equity interest holders | | |

### D.     Means of Implementing the Plan

####     1.     *Source of Payments*

Payments and distributions under the Plan will be funded by the following: The debtor is self-employed as an event coordinator.

####     2.     *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (Yes or No) | Position | Compensation |
|------|--------------|---------------------|----------|--------------|
| George Fisette | Debtor | Yes | Event Coordinator | To be determined |
| | | | | |
| | | | | |

### E.     Risk Factors

The proposed Plan has the following risks:
None to the creditors. There are no assets that they would receive if the debtor was liquidated that may be lost during a failed Chapter 11 plan. The assets of debtor are fully encumbered by leases and/or security agreements.

### F.     Executory Contracts and Unexpired Leases

There are no Executory Contracts and Unexpired leases that debtor will assume or reject.

All executory contracts and unexpired leases that are not listed in Exhibit 6.1 will be rejected under the Plan.  Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your

objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**The deadline for filing a Proof of Claim based on a claim arising from the Rejection of a lease or contract is** March 10, 2011.  Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

### G.    Tax Consequences of the Plan

**Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys and/or Advisors.**

The following are the anticipated tax consequences of the Plan: None.

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) ir (b) if the Code.  These include the requirements that:  the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.  The requirements are _not_ the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes four are impaired and that holders of claims in each of these classes are therefore entitles to vote to accept or reject the Plan.  The Plan Proponent believes that class 1and that holders of claims in each of these classes are not impaired, therefore, do not have the right to vote to accept or reject the plan.

### 1.    *What is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been

scheduled as disputed, contingent or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

> ***The deadline for filing a proof of claim in this case is March 10, 2011.***
> ***The deadline for filing objections to claims is set in the notice for the confirmation hearing.***

### 2.    *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired is the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3.    *Who is **Not** Entitled to Vote?*

- The holders of the following five types of claims and equity interests are *not* entitled to vote:
- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and

- administrative expenses.

***Even If You Are Not Entitled to Vote of the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

### 4.    *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an

unsecured claim, or who should otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B.    **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

#### 1.    *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur:  (1) the holders of more than one-half (½) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

#### 2.    *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan is the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code.  A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### C.    **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  A liquidation analysis is attached to this Disclosure Statement as Exhibit E.

### D.    **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the

liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.    *Ability to Initially Fund a Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.  Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibit F.

2.    *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information.  Those predictions are listed in Exhibit G.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of $6,700.00.

***You should consult with your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V.    EFFECT OF CONFIRMATION OF PLAN

### A.    DISCHARGE OF DEBTOR

<u>Discharge</u>.  Confirmation of the Plan does not discharge any debt provided for in the Plan until the Court grants a discharge on completion of all payments under the Plan, or as otherwise provided in §1141(d)(5) of the Code.  Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007 (c) of the Federal Rules of Bankruptcy Procedure.

### B.    Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

### C.       Final decree

Once the estate has been substantially consummated, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or other such party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.  The debtor shall file with the Court upon payment of all payments due under the plan a motion to re-open this case to obtain a final discharge of her debts for which no charge will be made by the Clerk for such re-opening.

## VI.    OTHER PLAN PROVISIONS
            None


February 1, 2011                              /s/ George Walter Fisette
                                             George Walter Fisette
                                             Plan Proponent



                                              /s/  D. Nathan Davis
                                             D. Nathan Davis
                                             Attorney for the Plan Proponent
                                             Davis Law Firm
                                             711-A St. Andrews Blvd.
                                             Charleston, SC  29407
                                             843-571-4042

**EXHIBITS**

**Exhibit A -** Copy of the Proposed Plan of Reorganization

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

|  |  |  |
|---|---|---|
| | ) | |
| In re George Walter Fisette | ) | Case Number: 10-05566-dd |
| | ) | |
| | ) | Small Business Case under Chapter 11 |

**GEORGE WALTER FISETTE'S PLAN OF REORGANIZATION**
**DATED FEBRUARY 1, 2011**

**ARTICLE 1**
**SUMMARY**

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of  (the "Debtor") from the earnings of the debtor.

This Plan provides for 2 classes of secured claims, 2 classes of unsecured claims. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately five (5) cents on the dollar. This Plan also provides for the payment of administrative and priority claims as approved by the Court.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.  A Disclosure Statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights might be affected.  You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**ARTICLE II**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

2.01     Class 1.         All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), ["gap" period claims in an involuntary case under § 507(a)(3),] and priority tax claims under § 507(a)(8)).

2.02     Class 2.A       The secured claim of JP Morgan Chase Bank, National, to the extent allowed as a secured claim under § 506 of the Code and pursuant to the settlement order to be approved by this Court.

           Class 2.B       The entire claim of Chase Auto Finance, to the extent allowed as a secured claim under § 506 of the Code.

2.03   <u>Class 2.C</u>.   All unsecured claims allowed under § 502 of the Code except the deficiency claim of JP Morgan Chase Bank, NA.

2.04   <u>Class 2.D</u>.   Balance of claim of JP Morgan Chase Bank, NA

**ARTICLE III**
**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,**
**U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS**

3.01   <u>Unclassified Claims</u>.   Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02   <u>Administrative Expense Claims</u>.   Each holder of an administrative expense claim allowed under § 503 of the Code, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03   <u>Priority Tax Claims</u>.   NONE.

3.04   <u>United States Trustee Fees</u>.   All fees required to be paid by 28 U.S.C §1903(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

**ARTICLE IV**
**<u>TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN</u>**

4.01   Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority Claims | None | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan as defined in Article VII, or the date on which such claim is allowed by a final non-appealable order. |
| Class 2a. - Secured Claim of JP Morgan Chase Bank | Yes | Mortgage will be valued in the debtor's Chapter 11 plan at $350,000.00. The debtor will pay $1,933.00 per month for a period of 8 years to the creditor with an interest rate of 5.25%. After 8 years, all remaining amounts will be owed in full in one lump payment unless parties agree to re-amortize loan which must be consensual. |
| Class 2b. Secured Claim of Chase Auto Finance | Yes | Debtor will pay $234.84 for a period of 60 months with an interest rate of 5.25% until the balance of $12,368.89 is paid in full. |
| Class 3 - General Unsecured Creditors

See attached list | Yes | Unsecured creditors will receive 0.05 of their total claimed amount. See attached Unsecured payout list for a breakdown of the debtor's payment schedule. |
| Class 4 - Unsecured claim balance of claim of JP Morgan-Chase Bank | Yes | Will receive 0.05 of balance of deficiency claim. Deficiency balance estimated at $251,141.01 x 0.05= $12,557.05 \ 72 months= $174.40 |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01  Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed, and as to which either: (I) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02  <u>Delay of Distribution on a Disputed Claim</u>.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable Order.

5.03  <u>Settlement of Disputed Claims</u>.  The Debtor will have the power and authority to settle and compromise a disputed claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**ARTICLE VI**
**PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.01  <u>Assumed Executory Contracts and Unexpired Leases</u>.

(a)    The Debtor assumes the following executory contracts and/or unexpired leases:
None

(b)    The Debtor will be conclusively deemed to have rejected all contracts and/or unexpired leases not expressly assumed under Section 6.01(a) above, or before the date of the order confirming this Plan, upon the Effective date of plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

**ARTICLE VII**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

7.01    Debtor will implement this plan by payment of monies earned from his present and future income earning activities. The debtor will begin making the payments set forth in the plan to secured and unsecured creditors on the 15th of the month that comes due at least 11 days after confirmation of this plan.

**ARTICLE VIII**
**GENERAL PROVISIONS**

8.01  <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.02  <u>Effective Date of Plan</u>.  The effective date of this Plan is the eleventh business day following the date of entry of the order of confirmation.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03  <u>Severability</u>.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

8.04  <u>Binding Effect</u>.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05  <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06  <u>Controlling Effect</u>.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of South Carolina govern this Plan and any agreements, documents, and instructions executed in connection with this Plan, except as otherwise provided in this Plan.

**ARTICLE IX**
**<u>DISCHARGE</u>**

9.01   <u>Discharge</u>.  Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge upon completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code.  The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**ARTICLE X**
**<u>OTHER PROVISIONS</u>**
**NONE**

February 1, 2011                                         Respectfully Submitted,

                                                          By: <u>/s/ George Walter Fisette</u>
                                                          George Walter Fisette
                                                          The Plan Proponent

                                                          By: <u>/s/ D. Nathan Davis</u>
                                                          D. Nathan/s/ D. Nathan Davis
                                                          Davis Law SC
                                                          711-A St. Andrews Blvd.
                                                          Charleston, SC 29407
                                                          843-571-4042  Office
                                                          888-821-9554   Facsimile
                                                          Nathan@davislawsc.com
                                                          Attorney for Debtor

**Exhibit B** - Identity and Value of Material Assets of Debtor

| Property Description | Value Amount | Notes |
|---|---|---|
| 2006 Dodge Ram | $12,000.00 | |
| 43 Mary Street, Charleston SC | $350,00.00 | Mortgage valued at $350,000.00 |
| Household Goods | $3,000.00 | |
| Books, cds, movies, etc. | $500.00 | |
| Clothing | $500.00 | |
| Miscellaneous Jewelry | $750.00 | |
| | | |
| | | |

**Exhibit C** - Prepetition Financial Statements    None
(to be taken from those filed with the Court)

**Exhibit D** - Most Recently Filed Operating Report

B 25C (Official Form 25C) (12/08)

# UNITED STATES BANKRUPTCY COURT

In re  George Walter Fisette _____ ,       Case No.  10-05566-dd _____

_____*Debtor*_____

Small Business Case under Chapter 11

## SMALL BUSINESS MONTHLY OPERATING REPORT

Month:   December 2010 _____           Date filed: _____

Line of Business:   Production Company _____    NAISC Code: _____

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING SMALL BUSINESS MONTHLY OPERATING REPORT AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT AND COMPLETE.

RESPONSIBLE PARTY:

_____
Original Signature of Responsible Party

George Walter Fisette
_____
Printed Name of Responsible Party

**Questionnaire:** *(All questions to be answered on behalf of the debtor.)*

| | | Yes | No |
|---|---|---|---|
| 1. | IS THE BUSINESS STILL OPERATING? | ☑ | ☐ |
| 2. | HAVE YOU PAID ALL YOUR BILLS ON TIME THIS MONTH? | ☑ | ☐ |
| 3. | DID YOU PAY YOUR EMPLOYEES ON TIME?   No employees | ☐ | ☐ |
| 4. | HAVE YOU DEPOSITED ALL THE RECEIPTS FOR YOUR BUSINESS INTO THE DIP ACCOUNT THIS MONTH?   Debtor is in the process of switching bank accounts. | ☐ | ☑ |
| 5. | HAVE YOU FILED ALL OF YOUR TAX RETURNS AND PAID ALL OF YOUR TAXES THIS MONTH | ☐ | ☑ |
| 6. | HAVE YOU TIMELY FILED ALL OTHER REQUIRED GOVERNMENT FILINGS? | ☑ | ☐ |
| 7. | HAVE YOU PAID ALL OF YOUR INSURANCE PREMIUMS THIS MONTH? | ☑ | ☐ |
| 8. | DO YOU PLAN TO CONTINUE TO OPERATE THE BUSINESS NEXT MONTH? | ☑ | ☐ |
| 9. | ARE YOU CURRENT ON YOUR QUARTERLY FEE PAYMENT TO THE U.S. TRUSTEE? | ☐ | ☐ |
| 10. | HAVE YOU PAID ANYTHING TO YOUR ATTORNEY OR OTHER PROFESSIONALS THIS MONTH? | ☑ | ☐ |
| 11. | DID YOU HAVE ANY UNUSUAL OR SIGNIFICANT UNANTICIPATED EXPENSES THIS MONTH? | ☐ | ☑ |
| 12. | HAS THE BUSINESS SOLD ANY GOODS OR PROVIDED SERVICES OR TRANSFERRED ANY ASSETS TO ANY BUSINESS RELATED TO THE DIP IN ANY WAY? | ☐ | ☑ |
| 13. | DO YOU HAVE ANY BANK ACCOUNTS OPEN OTHER THAN THE DIP ACCOUNT? | ☑ | ☐ |

Page 2

B 25C (Official Form 25C) (12/08)

14.  HAVE YOU SOLD ANY ASSETS OTHER THAN INVENTORY THIS MONTH?          ☐  ☑

15.  DID ANY INSURANCE COMPANY CANCEL YOUR POLICY THIS MONTH?          ☐  ☑

16.  HAVE YOU BORROWED MONEY FROM ANYONE THIS MONTH?          ☐  ☑

17.  HAS ANYONE MADE AN INVESTMENT IN YOUR BUSINESS THIS MONTH?          ☐  ☑

18.  HAVE YOU PAID ANY BILLS YOU OWED BEFORE YOU FILED BANKRUPTCY?          ☐  ☑

## TAXES

DO YOU HAVE ANY PAST DUE TAX RETURNS OR PAST DUE POST-PETITION TAX
OBLIGATIONS?          ☐  ☑

IF YES, PLEASE PROVIDE A WRITTEN EXPLANATION INCLUDING WHEN SUCH RETURNS WILL
BE FILED, OR WHEN SUCH PAYMENTS WILL BE MADE AND THE SOURCE OF THE FUNDS FOR
THE PAYMENT.

*(Exhibit A)*

## INCOME

PLEASE SEPARATELY LIST ALL OF THE INCOME YOU RECEIVED FOR THE MONTH.  THE LIST
SHOULD INCLUDE ALL INCOME FROM CASH AND CREDIT TRANSACTIONS. *(THE U.S. TRUSTEE
MAY WAIVE THIS REQUIREMENT.)*

|                                                                                  |    |           |
|----------------------------------------------------------------------------------|----|-----------|
| **TOTAL INCOME**                                                                 | $  | 12,623.88 |
| **SUMMARY OF CASH ON HAND**                                                      |    |           |
| Cash on Hand at Start of Month                                                   | $  | 1,519.11  |
| Cash on Hand at End of Month                                                     | $  | 1,001.57  |
| PLEASE PROVIDE THE TOTAL AMOUNT OF CASH CURRENTLY AVAILABLE TO YOU   **TOTAL**   | $  | 517.54    |

*(Exhibit B)*

## EXPENSES

PLEASE SEPARATELY LIST ALL EXPENSES PAID BY CASH OR BY CHECK FROM YOUR BANK
ACCOUNTS THIS MONTH.  INCLUDE THE DATE PAID, WHO WAS PAID THE MONEY, THE
PURPOSE AND THE AMOUNT. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

|                   |   |          |
|-------------------|---|----------|
| **TOTAL EXPENSES** | $ | 9,379.28 |

*(Exhibit C)*

## CASH PROFIT

|                                              |                                   |    |           |
|----------------------------------------------|-----------------------------------|----|-----------|
| INCOME FOR THE MONTH *(TOTAL FROM EXHIBIT B)*|                                   | $  | 12,623.88 |
| EXPENSES FOR THE MONTH *(TOTAL FROM EXHIBIT C)*|                                 | $  | 9,379.28  |
| *(Subtract Line C from Line B)*              | **CASH PROFIT FOR THE MONTH**     | $  | 3,244.60  |

B 25C (Official Form 25C) (12/08)

## UNPAID BILLS

PLEASE ATTACH A LIST OF ALL DEBTS (INCLUDING TAXES) WHICH YOU HAVE INCURRED
SINCE THE DATE YOU FILED BANKRUPTCY BUT HAVE NOT PAID.  THE LIST MUST INCLUDE
THE DATE THE DEBT WAS INCURRED, WHO IS OWED THE MONEY, THE PURPOSE OF THE
DEBT AND WHEN THE DEBT IS DUE. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

TOTAL PAYABLES  $ _____ 0.00

*(Exhibit D)*

## MONEY OWED TO YOU

PLEASE ATTACH A LIST OF ALL AMOUNTS OWED TO YOU BY YOUR CUSTOMERS FOR WORK
YOU HAVE DONE OR THE MERCHANDISE YOU HAVE SOLD.  YOU SHOULD INCLUDE WHO
OWES YOU MONEY, HOW MUCH IS OWED AND WHEN IS PAYMENT DUE. *(THE U.S. TRUSTEE MAY
WAIVE THIS REQUIREMENT.)*

TOTAL RECEIVABLES  $ _____ 0.00

*(Exhibit E)*

## BANKING INFORMATION

PLEASE ATTACH A COPY OF YOUR LATEST BANK STATEMENT FOR EVERY ACCOUNT YOU
HAVE AS OF THE DATE OF THIS FINANCIAL REPORT OR HAD DURING THE PERIOD COVERED
BY THIS REPORT.

*(Exhibit F)*

## EMPLOYEES

NUMBER OF EMPLOYEES WHEN THE CASE WAS FILED? _____ 0

NUMBER OF EMPLOYEES AS OF THE DATE OF THIS MONTHLY REPORT? _____ 0

## PROFESSIONAL FEES

*BANKRUPTCY RELATED:*

PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID DURING THIS REPORTING
PERIOD?                                                                                                $ _____ 0.00

TOTAL PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID SINCE THE FILING
OF THE CASE?                                                                                           $ _____ 0.00

*NON-BANKRUPTCY RELATED:*

PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID DURING THIS
REPORTING PERIOD?                                                                              $ _____ 0.00

TOTAL PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID SINCE THE
FILING OF THE CASE?                                                                             $ _____ 0.00

B 25C (Official Form 25C) (12/08)

## PROJECTIONS

COMPARE YOUR ACTUAL INCOME AND EXPENSES TO THE PROJECTIONS FOR THE FIRST 180
DAYS OF YOUR CASE PROVIDED AT THE INITIAL DEBTOR INTERVIEW.

|             | Projected    | Actual      | Difference |
|-------------|--------------|-------------|------------|
| INCOME      | $ 22,267.00  | $ 12,623.88 | $ 9,643.12 |
| EXPENSES    | $ 17,519.56  | $ 9,379.28  | $ 8,140.28 |
| CASH PROFIT | $ 4,747.44   | $ 3,244.60  | $ 1,499.84 |

TOTAL PROJECTED INCOME FOR THE NEXT MONTH:              $   22,267.00

TOTAL PROJECTED EXPENSES FOR THE NEXT MONTH:            $   17,519.56

TOTAL PROJECTED CASH PROFIT FOR THE NEXT MONTH:         $    4,747.44

## ADDITIONAL INFORMATION

**PLEASE ATTACH ALL FINANCIAL REPORTS INCLUDING AN INCOME STATEMENT AND BALANCE SHEET
WHICH YOU PREPARE INTERNALLY.**

# Chapter 11 Sumary Report

**Report Date**                     Dec, 2010

**Total Business Income**
| | |
|---|---|
| FF-8166 | 11,937.32 |
| FF-0953 | 686.56 |
| DIP | - |
| | **12,623.88** |

**Cash on Hand - Start of Month**
| | |
|---|---|
| FF-8166 | 662.92 |
| FF-0953 | 796.42 |
| DIP | 59.77 |
| | **1,519.11** |

**Cash on Hand - End of Month**
| | |
|---|---|
| FF-8166 | 0.23 |
| FF-0953 | 941.57 |
| DIP | 59.77 |
| | **1,001.57** |

**Total Business Expenses**
| | |
|---|---|
| FF-8166 | 8,780.32 |
| FF-0953 | 598.96 |
| DIP | - |
| | **9,379.28** |

**Income For The Month**       14,142.99

**Expense for The Month**       9,379.28

**Cash Profit For The Month**    4,763.71

Account Name: CHECKING CHOICE
Account Number: 50040953
Date Range: 12/01/2010 - 01/28/2011

| | | | Business Income | 796.42 |
| | | | Business Expenses | 941.57 |
| | | | 686.56 Starting Balance | |
| | | | 598.96 Ending Balance | |

| Transaction N Date | Description | Memo | Amount De | Amount Credit | Check Number | Fees |
|---|---|---|---|---|---|---|
| 12/02/2010 *8 | WEB Transfer Credit 105178166-D | Transfer | | | | 0 |
| 12/03/2010 *1 | WEB Transfer Credit 105178166-D | Transfer | | 800 | | 0 |
| 12/06/2010 *4 | Check Card 12/04/10 COUNTRY CLUB, MYRTLE BEACH | Business Expense - Refund | | 100 | | 0 |
| 12/06/2010 *4 | ACH DEPOSIT TRANSFER PAYPAL | Business Income | | 46.25 | | 0 |
| 12/06/2010 *1 | CHECK NUMBER | | 400 | | 10512 | 0 |
| 12/06/2010 *3 | WEB Transfer Credit 105178166-D | Transfer | | 1250 | | 0 |
| 12/07/2010 *2 | CHECK NUMBER | | 300 | | 10613 | 0 |
| 12/10/2010 *1 | WEB Transfer Credit 105178166-D | Business Income - Refund | | 286.56 | | 0 |
| 12/13/2010 *3 | CHECK NUMBER | | 130 | | 10614 | 0 |
| 12/13/2010 *1 | OVERDRAFT ITEM FEE | Bank Fee | 32 | | | 0 |
| 12/13/2010 *1 | CHECK NUMBER | Business Expense | 150 | | | 0 |
| 12/13/2010 *2 | WEB Transfer Credit 105178166-D | Transfer | | 144 | | 0 |
| 12/13/2010 *1 | WEB Transfer Withdrawal 105178166-D | Transfer | 288 | | | 0 |
| 12/21/2010 *4 | WEB Transfer Credit 105178166-D | Transfer | | 450 | | 0 |
| 12/22/2010 *2 | CHECK NUMBER | Business Expense | 250 | | 10615 | 0 |
| 12/23/2010 *1 | Check Card 12/22/10 HARDEES PAWLEYS ISLA SC | Business Expense | 13.13 | | | 0 |
| 12/24/2010 *2 | WEB Transfer Withdrawal 105178166-D | Transfer | 2.83 | | | 0 |
| 12/27/2010 *9 | Check Card 12/24/10 DROPBOX 888-446-8396 CA | Business Expense | 9.99 | | | 0 |
| 12/28/2010 *1 | WEB Transfer Credit 105178166-D | Transfer | | 100 | | 0 |
| 12/29/2010 *8 | Transfer Deposit | Transfer | | 87 | | 0 |
| 12/30/2010 *3 | Check Card 12/29/10 EXXONMOBIL RICHMOND VA | Business Expense | 38.99 | | | 0 |
| 12/30/2010 *1 | Check Card 12/29/10 MCDONALD'S M29 LAUREL MD | Business Expense | 1.06 | | | 0 |
| 12/30/2010 *8 | Check Card 12/29/10 MCDONALD'S M29 LAUREL MD | Business Expense | 8.36 | | | 0 |
| 12/30/2010 *6 | Purchase EXXONMOBIL RICHMOND VA | Business Expense | 6.18 | | | 0 |
| 12/31/2010 *7 | Check Card 12/29/10 M AND N CITGO SELMA NC | Business Expense | 75 | | | 0 |

| Date | Description | Category | Amount 1 | Amount 2 | Check # |
|---|---|---|---|---|---|
| 12/16/2010 | Deposit | Business Expense (Venue Rental - Refund) | 5400 | | |
| 12/16/2010 | Check Withdrawal | Business Expense (Venue Rental) | | 7075 | |
| 12/16/2010 | ACH DEPOSIT TRANSFER PAYPAL | Business Income | 315 | | |
| 12/17/2010 | Check Card 12/16/10 ODESK**BAL-16 650-8534100 CA | Business Expense | | 77.44 | |
| 12/17/2010 | Check Card 12/16/10 THRIVE RESTAUR NORCROSS GA | Business Expense | | 90 | |
| 12/17/2010 | Check Card 12/15/10 D'ALLESANDRO'S CHARLESTON SC | Food | | 21 | |
| 12/20/2010 | Check Card 12/18/10 GLENN AUTOGRAP ATLANTA GA | Business Expense | | 38.94 | |
| 12/20/2010 | Check Card 12/18/10 GLENN AUTOGRAP ATLANTA GA | Business Expense | | 176.07 | |
| 12/20/2010 | Purchase MARTA Atlanta GA | Business Expense | | 2.5 | |
| 12/20/2010 | Purchase SHELL Service SUMMERVILLE SC | Business Expense | | 33.05 | |
| 12/20/2010 | Purchase TRUCK STOP 44 GILBERT SC | Business Expense | | 13.71 | |
| 12/20/2010 | Purchase TRUCK STOP 44 GILBERT SC | Business Expense | | 36.62 | |
| 12/20/2010 | Check Card 12/18/10 CB MT PLEASANT MT PLEASANT SC | Business Expense | | 47.09 | |
| 12/20/2010 | Purchase HARRIS TEETER Charleston SC | Entertainment | | 4.04 | |
| 12/20/2010 | Purchase HARRIS TEETER Charleston SC | Food | | 157.61 | |
| 12/21/2010 | Check Card 12/21/10 SRR*SIRIUS RAD 888-539-7474 NY | Food | | 14.35 | |
| 12/21/2010 | Foreign Refund San Jose CA | Business Expense - Refund | 129.68 | | |
| 12/21/2010 | Check Card 12/20/10 JOE PASTA CHARLESTON SC | Food | | 73 | |
| 12/21/2010 | WEB Transfer Withdrawal 50040953-D | Transfer | | 450 | |
| 12/22/2010 | Check Card 12/20/10 GERMAN AUTO RE NORTH CHARLE SC | Child Support | | 482.5 | |
| 12/23/2010 | Check Card 12/22/10 FEDEX 87281876 800-4633339 TN | Vehicle - Fuel | | 28.88 | |
| 12/23/2010 | Purchase LOWE'S #661 CHARLESTON SC | Business Expense | | 33.54 | |
| 12/24/2010 | ACH DEPOSIT DYKG GOOGLE DEPOSIT | Business Income | 153.01 | | |
| 12/24/2010 | Purchase COSTCO WHSE #0 CHARLESTON SC | Food | | 24.84 | |
| 12/24/2010 | WEB Transfer Credit 50040953-D | Transfer | 2.83 | | |
| 12/27/2010 | OVERDRAFT/RETURNED ITEM FEE | Bank Fee | | 32 | |
| 12/27/2010 | Check Card 12/24/10 BURRIS LIQUOR CHARLESTON SC | Business Expense | | 52.71 | |
| 12/27/2010 | Check Card 12/23/10 KANGAROO EXPRE CHARLESTON SC | Vehicle - Fuel | | 10 | |
| 12/28/2010 | Purchase U-Haul Moving CHARLESTON? SC | Business Expense | | 165.75 | |
| 12/28/2010 | ACH DEPOSIT DYKG GOOGLE DEPOSIT | Business Income | 3244.95 | | |
| 12/28/2010 | Check Card 12/24/10 SWEET 185 LLC 843-329-3500 SC | Health / Beauty / Pharmaceuticals | | 55 | |
| 12/28/2010 | WEB Transfer Withdrawal 50040953-D | Transfer | | 100 | |
| 12/29/2010 | Check Card 12/28/10 BURRIS LIQUOR CHARLESTON SC | Business Expense | | 104.97 | |
| 12/29/2010 | Check Card 12/28/10 ODESK**BAL-28 650-8534100 CA | Business Expense | | 51.64 | |
| 12/29/2010 | CHECK NUMBER | Business Expense (Venue Rental) | | 3100 | 596 |
| 12/29/2010 | ACH DEPOSIT DYKG GOOGLE DEPOSIT | Business Income | 487.2 | | |
| 12/29/2010 | Check Card 12/28/10 GENTS CHARLESTON SC | Health / Beauty / Pharmaceuticals | | 80 | |
| 12/29/2010 | Transfer Withdrawal | Transfer | | 87 | |
| 12/29/2010 | Purchase EXXONMOBIL CHARLEST SC | Vehicle - Fuel | | 31.68 | |
| 12/30/2010 | Check Card 12/29/10 FRIENDFINDER 610-7571929 CA | Business Expense | | 29.95 | |
| 12/31/2010 | Interest Paid | Interest Income | | 0.04 | |

Account Name: MOOLAH CHECKING
Account Number: 105178166
Date Range: 12/01/2010 - 01/28/2011

| | | | |
|---|---|---|---|
| Business Income | Starting Balance | 11937.32 | 662.92 |
| Business Expenses | Ending Balance | 19939.68 | 0.23 |

| Transaction Date | Description | Memo | Amount Debit | Amount Credit | Check Number | Fees |
|---|---|---|---|---|---|---|
| 12/01/2010 | Check Card 11/29/10 GS MOTORSPORTS IRVING TX | Business Expense | 50 | | | |
| 12/01/2010 | Check Card 11/29/10 PAYPAL *MEDUSA 402-935-7733 GA | Business Expense | 70.75 | | | |
| 12/01/2010 | Check Card 12/01/10 VOICECONNECTIN 878-303-2750 GA | Business Expense | 21.7 | | | |
| 12/01/2010 | ACH DEPOSIT TRANSFER PAYPAL | Business Income | | 485 | | |
| 12/01/2010 | ACH DEPOSIT TRANSFER PAYPAL | Business Income | | 485 | | |
| 12/01/2010 | Check Card 11/29/10 SAFFRON CAFE A CHARLESTON SC | Food | 11 | | | |
| 12/02/2010 | Check Card 11/30/10 MCDONALD'S F69 COLUMBIA SC | Food | 6.1 | | | |
| 12/02/2010 | Check Card 12/01/10 HUNTZMODELS PORTLAND OR | Business Expense | 15.95 | | | |
| 12/02/2010 | Check Card 12/01/10 MADISON GA TRV MADISON GA | Business Expense | 61.05 | | | |
| 12/02/2010 | Check Card 12/01/10 U-HAULSECOND A BESSEMER AL | Business Expense | 79.92 | | | |
| 12/02/2010 | Check Card 12/01/10 YAHOO *DOYOUK 800-318-0870 CA | Business Expense | 13.94 | | | |
| 12/02/2010 | WEB Transfer Withdrawal 50040953-D | Transfer | 800 | | | |
| 12/02/2010 | Check Card 12/01/10 AAA CAROLINAS CHARLOTTE NC | Vehicle - Maintainance | 109 | | | |
| 12/03/2010 | Check Card 12/01/10 RACE/WY901 OXFORD AL | Business Expense | 66.13 | | | |
| 12/03/2010 | Check Card 12/01/10 SLEEP INN BESSEMER AL | Business Expense | 62.69 | | | |
| 12/03/2010 | ACH DEPOSIT DYKG GOOGLE DEPOSIT | Business Income | | 485.2 | | |
| 12/03/2010 | Purchase BEST BUY #1120 CHARLESTON SC | Children - Birthday Gift - CDF | 161.24 | | | |
| 12/03/2010 | Check Card 12/01/10 ELLIS HOTEL ATLANTA GA | Food | 23 | | | |
| 12/03/2010 | Purchase COSTCO WHSE #0 CHARLESTON SC | Food | 121.5 | | | |
| 12/03/2010 | WEB Transfer Withdrawal 50040953-D | Transfer | 100 | | | |
| 12/06/2010 | Check Card 12/02/10 KOYAL WHOLESAL CORONA, CA | Business Expense | 129.68 | | | |
| 12/06/2010 | Check Card 12/03/10 J J BUCKLEY LL 510-832-5300 CA | Business Expense | 53.56 | | | |
| 12/06/2010 | Check Card 12/04/10 ODESK**BAL-04 650-8534100 CA | Business Expense | 71.01 | | | |
| 12/06/2010 | Check Card 12/04/10 ODESK**BAL-04 650-8534100 CA | Business Expense | 27.05 | | | |
| 12/06/2010 | Purchase KANGAROO EXPRE LITTLE RIVER SC | Business Expense | 9.67 | | | |
| 12/06/2010 | Purchase Wal-Mart Super SHALLOTTE NC | Business Expense | 27.09 | | | |
| 12/06/2010 | WEB Transfer Withdrawal 50040953-D | Transfer | 300 | | | |
| 12/06/2010 | Check Card 12/02/10 D'ALLESANDRO'S CHARLESTON SC | Children - Birthday Gift - CDF | 29 | | | |
| 12/06/2010 | Check Card 12/04/10 EXXONMOBIL CHARLESTON SC | Vehicle - Fuel | 35 | | | |
| 12/07/2010 | ACH DEPOSIT DYKG GOOGLE DEPOSIT | Business Income | | 466.01 | | |
| 12/07/2010 | Deposit Check | Business Income | | 533.75 | | |
| 12/07/2010 | Purchase Wal-Mart Store JAMES ISLAND SC | Business Expense | 94.6 | | | |
| 12/08/2010 | ACH DEPOSIT DYKG GOOGLE DEPOSIT | Business Income | | 760.2 | | |
| 12/08/2010 | Purchase RACK ROOM SHOE CHARLESTON SC | Children - Birthday Gift - CDF | 37.61 | | | |
| 12/08/2010 | Check Card 12/07/10 OMALLEYS 800-0000000 SC | Children - Birthday Gift - CDF | 32.68 | | | |
| 12/08/2010 | Purchase RITE AID CORP. CHARLESTON SC | Health / Beauty / Pharmaceuticals | 9.13 | | | |
| 12/09/2010 | Check Card 12/09/10 YAHOO *ENVIRO 800-318-0870 CA | Business Expense | 13.94 | | | |
| 12/09/2010 | Purchase HARRIS TEETER Charleston SC | Food | 61.76 | | | |
| 12/09/2010 | Check Card 12/08/10 KANGAROO EXPRE CHARLESTON SC | Vehicle - Fuel | 19.85 | | | |
| 12/10/2010 | Check Card 12/09/10 HUGHES LUMBER CHARLESTON SC | Business Expense | 8.58 | | | |
| 12/10/2010 | Check Card 12/09/10 ODESK**BAL-09 650-8534100 CA | Business Expense | 48.93 | | | |
| 12/10/2010 | ACH WITHDRAWAL SFPP STATE FARM RO 27 | Insurance | 177.28 | | | |
| 12/10/2010 | WEB Transfer Withdrawal 50040953-D | Transfer | 130 | | | |
| 12/10/2010 | Util Bill Pay Foreign SCANA Energy/B Columbia SC | Business Expense | 243.5 | | | |
| 12/13/2010 | Purchase HARRIS TEETER Charleston SC | Business Expense (Venue Rental) | 2200 | | | |
| 12/13/2010 | ACH DEPOSIT TRANSFER PAYPAL | Business Income | | 1464 | | |
| 12/13/2010 | Check Card 12/10/10 SANTIS CHARLESTON SC | Food | 24.81 | | | |
| 12/13/2010 | WEB Transfer Credit 50040953-D | Transfer | | 288 | | |
| 12/13/2010 | Check Card 12/09/10 ODESK**BAL-09 650-8534100 CA | Transfer | 144 | | | |
| 12/14/2010 | ACH WITHDRAWAL C6 MT PLEASANT MT PLEASANT SC | Entertainment | 20 | | | |
| 12/15/2010 | Wire Transfer Fee | Bank Fee | 12 | | | |
| 12/15/2010 | Wire Transfer Credit MICHAEL P SPRINTZ | Business Income | | 3000 | | |

Account Name: Debtor in Posession
Account Number: 810547003
Date Range: 11/04/2010 - 11/30/2010

Business Income
Business Expenses

0 Starting Balance
0 Ending Balance

59.77
59.77

| Transaction Date | Description | Memo | Amount Debit | Amount Credit | Check Number | Fees |
|---|---|---|---|---|---|---|
| | *** No Transactions This Month *** | | | | | |

# First Federal



**ACCOUNT STATEMENT**

P.O. Box 118068 • Charleston, SC 29423

CHECKING CHOICE

Page     1

Account Number
0050040953

1FED

**Temp-Return Service Requested**

001035 0.6200 AT 0.357          TR00006

GEORGE W FISETTE
43 MARY ST
CHARLESTON SC 29403-6215

Statement Period: Dec 21 thru Jan 23   2011

| Beginning Balance | Additions | No. | Subtractions | No. | Ending Balance |
|---|---|---|---|---|---|
| 174.05- | 1,120.92 | 5 | 1,505.70 | 16 | 558.83- |

Beginning February 15, 2011, all First Federal Checking and Money Market accounts will receive the following changes to their account structure:

Overdraft / Returned Item (NSF) Fee -     $35.00
Continuous Negative Balance Fee -     $5.00 for every 7 calendar days that the account has a negative balance in excess of $40. (Up to a maximum of $25 charged per occurrence)

International Transaction Fee* -     2.00%  (Effective 3/15/11)

*The International Transaction Fee is a 2% charge assessed on the dollar amount of ATM/ debit card transactions completed outside of the United States. Military personnel will receive a rebate of 1% of the fee amount; Premier Relationship Group clients will receive a rebate of .50% of the fee amount.

| TRANSACTION ACTIVITY | Deposits | Withdrawals | Balance |
|---|---|---|---|
| Dec 21 Beginning Balance | | | 174.05- |
| Dec 21 WEB Transfer Credit 105178166-D | 450.00 | | 275.95 |
| Dec 22 CHECK 10615 | | 250.00 | 25.95 |
| Dec 23 Check Card 12/22/10 HARDEES   PAWLEYS ISLA SC | | 13.13 | 12.82 |
| Dec 24 WEB Transfer Withdrawal 105178166-D | | 2.83 | 9.99 |
| Dec 27 Check Card 12/24/10 DROPBOX  888-446-8396 CA | | 9.99 | .00 |
| Dec 28 WEB Transfer Credit 105178166-D | 100.00 | | 100.00 |
| Dec 29 Transfer Deposit | 87.00 | | 187.00 |
| Dec 30 Check Card 12/29/10 MCDONALD'S M29 LAUREL   MD | | 1.06 | 185.94 |
| Dec 30 Check Card 12/29/10 MCDONALD'S M29 LAUREL   MD | | 8.36 | 177.58 |
| Dec 30 Check Card 12/29/10 EXXONMOBIL  RICHMOND   VA | | 38.99 | 138.59 |
| Dec 30 Purchase EXXONMOBIL  RICHMOND  VA | | 6.18 | 132.41 |
| Dec 31 Check Card 12/29/10 M AND N CITGO   SELMA  NC | | 75.00 | 57.41 |
| Jan  3 WEB Transfer Withdrawal 105178166-D | | 49.17 | 8.24 |
| Jan  7 Deposit Check | 119.00 | | 127.24 |
| Jan 10 Check Card 01/07/11 IEG LLC   312-9441727   IL | | 114.00 | 13.24 |
| Jan 11 Deposit | 364.92 | | 378.16 |
| Jan 13 Purchase HARRIS TEETER  Charleston  SC | | 137.54 | 240.62 |
| Jan 14 Check Card 01/11/11 OMALLEYS  CHARLESTON  SC | | 30.00 | 210.62 |
| Jan 14 CHECK 10618 | | 687.50 | 476.88- |
| Jan 14 Overdraft Item Fee | | 32.00 | 508.88- |
| Jan 19 Check Card 01/13/11 TOLL FREE NUMB 809-6275383  NY | | 49.95 | 558.83- |



**First Federal**

CHECKING CHOICE                                    Page      2

Account Number
0050040953

GEORGE W FISETTE
43 MARY ST
CHARLESTON SC 29403-6215

CHECKS PAID
    Check   Date      Amount        Check   Date      Amount
    10615 Dec 22       250.00      10618*Jan 14       687.50
* Denotes missing check numbers

| PAID AND RETURNED ITEM TOTALS (EXCLUDING REFUNDS) | Total This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | 32.00 | 32.00 |
| Total Returned Item Fees | .00 | .00 |

1FED-002-001035-001-001-110124  001035  K02



**CAROLINA FIRST**
Carolina First Bank is a trade name of TD Bank, N.A.

8105474003    15  T

GEORGE FISETTE
DEBTOR IN POSSESSION
CASE # 10-05566
517 KING STREET APT 11
CHARLESTON SC 29401

| | Account Number | Page 1 of 1 |
|---|---|---|
| December 14, 2010 - January 12, 2011 | 8105474003 | No enclosures |

**Easy Checking**                        **Summary**                        8105474003

| Previous Balance | + Deposits Credits | - Checks Debits | - Service Charges | + Interest Credits | New Balance |
|---|---|---|---|---|---|
| 59.77 | 0.00 | 0.00 | 0.00 | 0.00 | 59.77 |

29  Days in Statement Period

**Overdraft and Returned Item Fees Summary**

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Returned Item Fees | $0.00 | $0.00 |
| Total Overdraft Item Fees | $0.00 | $0.00 |
| Total Weekly Overdraft Fees | $0.00 | $0.00 |
| | | |

**Daily Balance Summary**

| Date | Balance | Date | Balance |
|---|---|---|---|
| 12-14 Beginning - Ending Balance | 59.77 | | |

**Exhibit E** - Liquidation Analysis

*Plan Proponent's Estimated Liquidation Value of Assets*

**Assets**

| | | |
|---|---|---|
| a. | Cash on hand | $250.00 |
| b. | Accounts receivable | $1,637.02 |
| c. | Inventory | $ |
| d. | Office furniture & equipment | $ |
| e. | Machinery & equipment | $ |
| f. | Automobiles | $12,000.00 |
| g. | Building & Land | $350,000.00 |
| h. | Customer List | $ |
| I. | Investment property (such as stocks, bonds or other financial assets) | $ |
| j. | Lawsuits or other claims against third-parties | $ |
| k. | Other intangibles (such as avoiding powers actions) | $ |

*Total Assets at Liquidation Value*

**Less:**
Secured creditors' recoveries                                $362,368.89
**Less:**
Chapter 7 trustee fees and expenses                          $0.00
**Less:**
Chapter 11 administrative expenses                           $0.00
**Less:**
Priority claims, excluding administrative expense claims      $0.00
**Less:**
Debtor's claimed exemptions                                  $6,638.02

(1)  Balance for unsecured claims                            $ 0.00

(2)  Total dollar amount of unsecured claims                 $482,102.33

*Percentage of Claims Which Unsecured Creditors Would* $0.00
*Receive or Retain in a Chapter 7 Liquidation:*

*Percentage of Claims Which Unsecured Creditors Will*  *$0.05*
*Receive or Retain Under the Plan:*

**Exhibit F** - Cash on hand on the effective date of the Plan

**Cash on hand on effective date of the Plan:**                    $ 1,000.00

*Less -*

|  |  |
|---|---|
| Amount of Administrative expenses payable on effective date of the Plan | $None |
| Amount of statutory costs and charges | $None |
| Amount of cure payments for executory contracts | $None |
| Other Plan Payments due on effective date of the Plan | $ 569.58 |
| Balance after paying these amounts.......... | $ 430.42 |

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

| | |
|---|---|
| $1,666.00 | Cash in Debtor's bank account now |
| 1,000.00 | Additional cash Debtor will accumulate from net earnings between now and effective date of the Plan (Debtor will be paying adequate protection to mortgage until plan confirmed) |
| None | Borrowing |
| None | Capital Contributions |
| None | Other |
| $2,666.00 | Total |

**Exhibit G** - Projections of Cash Flow and Earnings for Post-Confirmation Period

| | | |
|---|---|---|
| Income from Rental Property | $1,700.00 | |
| Income from Business | $5,000.00 | |
| | | |
| Expenses | $4,869.00 | Includes Mortgage payment of $1,933.00 |
| Car Payment to Chase Auto Finance | $234.84 | Paid in Chapter 11 plan |
| Unsecured payments totaled | $334.74 | Paid in Chapter 11 plan |
| | | |
| Total Income | $6,700.00 | |
| Total of Expenses and Chapter 11 plan payments | $5,438.58 | |
| Difference of Income and Payments | $1,261.42 | |

George Fisette
Unsecured Creditor Payout List
Case No. 10-05566-jw

| Creditor | Address to send payment | Amount | 5% | Payment to Creditor x 72 months | Notes |
|---|---|---|---|---|---|
| Afni | PO Box 3517 Bloomington IL 61702 | $141.38 | $7.07 | $0.10 | Disputed? |
| Allied Interstate, Inc. | PO Box 361774 Columbus OH 43236 | $483.54 | $24.18 | $0.34 | Disputed? |
| Baker Hostetler | PO Box 70189 Cleveland OH 44190-0189 | $1,294.00 | $64.70 | $0.90 | |
| Bankcard Services | PO Box 23065 Columbus GA 31902 | $1,069.35 | $53.47 | $0.74 | Disputed |
| Buist Byars & Taylor, LLC | 652 Coleman Blvd., Ste. 200 Mt. Pleasant SC 29464 | $2,454.62 | $122.73 | $1.70 | |
| CAB Collection Agency | PO Box 62889 N. Charleston SC 29419 | $130.00 | $6.50 | $0.09 | Disputed |
| Cablevision | PO Box 371378 Pittsburgh PA 15250-7378 | $55.66 | $2.79 | $0.04 | |
| Capital One Services | PO Box 790217 St. Louis MO 53179-0217 | $1,856.86 | $92.84 | $1.29 | Disputed |
| CBCS | PO Box 163250 Columbus OH 43216-3250 | $121.26 | $6.06 | $0.08 | Disputed |

| | | | | | |
|---|---|---|---|---|---|
| CBHV | PO Box 3495 Toledo OH 43607 | $223.35 | $11.17 | $0.16 | |
| Charleston Water Systems | PO Box 568 Charleston SC 29402 | $494.43 | $24.72 | $0.34 | |
| CitiFinancial | PO Box 8020 S. Hackensack NJ 07606-8020 | $11,799.81 | $589.99 | $8.19 | Disputed |
| Comcast Cable | PO Box 105184 Atlanta GA 30348-5184 | $570.46 | $28.52 | $0.40 | |
| Con Edison | PO Box 1702 New York, NY 10116-1702 | $1,033.16 | $51.66 | $0.72 | Disputed |
| Contract Callers, Inc. | PO Box 21209 Augusta GA 30917-2609 | $843.00 | $42.15 | $0.59 | Disputed |
| Dish Network | PO Box 105169 Atlanta GA 30348-5169 | $171.89 | $8.60 | $0.12 | Disputed |
| Encore Receivables Management | PO Box 3330 Olathe KS 66063 | $867.67 | $43.38 | $0.60 | Disputed |
| Farer & Schwartz, PC | 12 Century Hill Drive, Latham NY 12110 | $2,534.59 | $126.73 | $1.76 | |
| Felix Endico | 444 E. 86th St. New York, NY 10028 | $2,020.00 | $101.00 | $1.40 | Disputed |
| First Premier Bank | PO Box 5519 Sioux Falls SD 57117-5519 | $540.99 | $27.05 | $0.38 | Disputed |
| Greg Winton | 39 Southwait Bridge Way Lutherville MD 21093 | $5,000.00 | $250.00 | $3.43 | Creditor has agreed to forgive debt. |

| | | | | | |
|---|---|---|---|---|---|
| Jeniffer Heitzke | 15 Shadowood Circle Monroe CT 06468 | $16,500.00 | $825.00 | $11.46 | Creditor has agreed to forgive debt. |
| Judith Rickman | 19 Glendale Avenue Albany NY 12208 | $125,000.00 | $6,250.00 | $86.80 | Creditor has agreed to forgive debt. |
| Kent Zhang | 857 Madison Street, 1st Floor Brooklyn NY 11221 | $4,250.00 | $212.50 | $2.95 | Lease Deficiency |
| Matt O'Brian | 857 Madison St., 2nd Floor Brooklyn NY 11221 | $750.00 | $37.50 | $0.52 | Creditor has agreed to forgive debt. |
| MRS Associates | 3 Executive Campus Cherry Hill NJ 08002 | $665.01 | $33.25 | $0.46 | Disputed |
| National Grid | PO Box 20690 Brooklyn NY 11202-9965 | $29,809.24 | $1,490.46 | $20.70 | Disputed |
| NCO Financial Systems, Inc. | PO Box 17080 Wilmington DE 19850-7080 | $1,959.42 | $97.97 | $1.36 | Disputed |
| NCO Financial Systems, Inc. | PO Box 510950 New Berlin, WI 63151-0950 | $52.60 | $2.63 | $0.04 | Disputed |
| Nextel | PO Box 4192 Carol Stream IL 60197-4192 | $514.70 | $25.74 | $0.36 | Disputed |
| Northland Group | PO Box 390846 Minneapolis MN 55439 | $1,622.64 | $81.13 | $1.13 | Disputed |
| Receivable Management Services | PO Box 509 Richfield OH 44286 | $451.07 | $22.55 | $0.31 | Disputed |

| | | | | | |
|---|---|---|---|---|---|
| RMS | 4836 Brecksville Rd. P.O. Box 523 Richfield OH 44286 | $451.07 | $22.55 | $0.31 | |
| SCE&G | PO Box 10255 Columbia SC 29202-3255 | $534.12 | 26.70 | $0.37 | |
| SunCom Wireless PO Box 190028 Charleston SC 29419 | PO Box 190028 Charleston SC 29419 | $1,735.67 | $86.78 | $1.20 | Disputed |
| University Medical Associates | 1 Poston Rd, Ste 350 Charleston SC 29407-3431 | $413.00 | $20.65 | $0.28 | |
| Verizon | PO Box 1100 Albany NY 12250 | $169.11 | $8.46 | $0.12 | Disputed |
| Verizon Wireless | PO Box 15041 Worchester MA 01615-0041 | $3,508.31 | $175.42 | $2.44 | Disputed |
| Welch, Roberts, & Amburn | 157 E. Bay St. Charleston SC 29401 | $5,981.00 | $299.05 | $4.15 | |
| Wendi Freeman, LLC | 1040 E Wall St Mt. Pleasant SC 29464-3046 | $2,888.94 | $144.45 | $2.01 | |
| JP Morgan Chase | x | $251,141.01 | $12,557.05 | 174.40 | |
| | | | | | |
| Total Monthly Payment * | | | | $334.74 | |
| | | | | | |