# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>George Walter Fisette,<br><br>Debtor. | C/A No. 10-05566-DD<br><br>Chapter 11<br><br>**ORDER** |

This matter is before the Court for confirmation of George Walter Fisette's ("Debtor") amended chapter 11 plan ("Plan") filed March 30, 2011. Objections to confirmation of the Plan were filed by the United States Trustee ("UST") on April 28, 2011 and JP Morgan Chase Bank, N.A. ("Chase") on April 18, 2011. A hearing was held May 10, 2011. At the hearing, Chase indicated that it had reached an agreement with Debtor, and the parties entered into a consent order. UST continued to object. Following the hearing, the Court took the matter under advisement so it could further consider the matter. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court now makes the following findings of fact and conclusions of law.

## **FINDINGS OF FACT**

Debtor filed for chapter 13 protection on August 3, 2010. Debtor's case was converted to chapter 11 after Debtor filed a Motion to Convert on October 8, 2010. An Order granting Debtor's Motion to Convert was entered November 5, 2010. Debtor then filed his original chapter 11 plan on February 1, 2011. Confirmation of that plan was denied on March 16, 2011. Debtor filed a second plan on March 30, 2011.

Debtor's plan provides for total plan payments of approximately $2,500 per month.[1] Debtor also has a domestic support obligation in the amount of $1,250 per month. With the exception of the November 2010, January 2011, and April 2011 monthly operating reports, Debtor's monthly operating reports show income insufficient to cover these expenditures. An average of the cash profit reported on Debtor's monthly operating reports yields insufficient income in all months to cover plan payments. Testimony presented at the hearing indicated that all of Debtor's personal living expenses were not included in the monthly operating report calculations.

Debtor's Schedule D discloses $494,482 of secured debt, consisting of a mortgage on Debtor's residence and a lien on a 2006 Dodge Ram. Debtor's Schedule F shows $230,961.32 of unsecured debt. Debtor's Statement of Financial Affairs indicates that his sole source of income for the years 2008 and 2009 was income received from two individuals, Judith Rickman and Greg Winton. In 2010, Debtor's year to date income prior to filing of the petition was comprised of $9,600.18 of income from real property and $8,000 of income from Judith Rickman.

In September 2010, Debtor began an event production company called P.E. Productions. Debtor operates this business as a sole proprietorship, although he testified that he is in the process of incorporating the business. His company produces shows for Live Nation.[2] These shows are held in various cities nationwide at House of Blues locations and other Live Nation venues. Debtor testified that he has several shows scheduled through February 2012, and that from these shows he would earn, assuming no additional ticket sales or sponsorship, gross income of approximately $26,000 per show. After expenses, Debtor testified he would net

---

[1] This amount includes a payment to Chase for Debtor's vehicle listed in the Plan at $234.84 per month. Chase was granted relief from stay by the Order entered May 10, 2011; as a result, this debt will no longer be paid through the plan and will slightly reduce the total plan payments.
[2] Live Nation Entertainment is comprised of Ticketmaster.com, Live Nation Concerts, Front Line Management Group, and Live Nation Network. http://www.livenation.com/h/about_us.html (last visited May 12, 2011).

approximately $6,100 for each show.  Debtor testified that he has an average of one show per month scheduled through the end of the year.

Debtor testified that all of the shows he has previously produced have been successful, and that he anticipates those scheduled in the future will be as well.  To date, none of his shows have been canceled, although he testified that at least one had been rescheduled to a later date.  Currently, the events have two sponsors, SDC Media and Caliente Resorts.  Debtor testified that together, the sponsors' financial commitment totals over $100,000.

At some point during the infancy of his production company, Debtor spent over $10,000 on various equipment, including "stage props, lighting, musical instruments, wardrobe, drape & skirting."  Debtor's March 2011 Monthly Operating Report, docket no. 127, pg 10.  Debtor indicated that these expenses were necessary in order for him to continue producing events and that the cash profits showing on his monthly operating reports were substantially reduced by these one-time expenditures.  Debtor also testified that his monthly operating reports do not accurately reflect his financial condition because UST forced him to report on a cash accounting basis rather than on an accrual basis.

## CONCLUSIONS OF LAW

11 U.S.C. § 1129 governs confirmation of chapter 11 plans, and sets forth numerous requirements that must be met before a chapter 11 plan can be confirmed.  If all requirements set forth in section 1129 are met, the Court "shall" confirm the plan.  11 U.S.C. § 1129; *In re Gyro-Trac (USA), Inc.*, 441 B.R. 470, 477 (Bankr. D.S.C. 2010).  The Court must independently evaluate a proposed chapter 11 plan to ensure it complies with the requirements of section 1129 even if no creditors object.  *Gyro-Trac*, 441 B.R. at 477 (citing *In re Landscaping Servs., Inc.*, 39 B.R. 588, 590 (Bankr. E.D.N.C. 1984); *In re Econ. Cast Stone Co.*, 16 B.R. 647, 650 (Bankr.

E.D. Va. 1981)). The debtor bears the burden of proving by a preponderance of the evidence that his plan meets all section 1129 confirmation requirements. *Id.* (citing *In re Byrd Foods, Inc.*, 253 B.R. 196, 199 (Bankr. E.D. Va. 2000)).

Chase's objection to the second plan was sustained by a consent order executed by Debtor and Chase and entered on May 10, 2011. As a result, UST's objection is the only remaining objection to Debtor's Plan. UST's objection is based primarily on the feasibility of Debtor's Plan; however, UST also raised issues regarding unfiled tax returns, inaccurate monthly operating reports, and the failure to pay UST fees.

While UST presented extensive evidence in support of its contention that Debtor's Plan is not feasible, Debtor's Plan cannot be confirmed for other reasons. First, section 1129(a)(14) provides:

> The court shall confirm a plan only if all of the following requirements are met: . . . If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

At the confirmation hearing, Debtor testified that he was current on his domestic support obligation since the filing of his case.[3] However, evidence presented by UST indicated otherwise. UST presented evidence that during the six months his chapter 11 case has been pending, Debtor has only made the equivalent of three months of domestic support payments. The monthly operating reports show that the following payments were made:

November 2010: $522.88, listed as payments for "Children-Birthday"

December 2010: $1,250, listed as payment for "Child Support"; $482.50, listed as payment for "Child Support"; $303.12, listed as payments for "Children-Birthday Gift"

---

[3] It is not clear from the record whether the domestic support obligation arises from an order, agreement, or otherwise. What is clear, however, is that Debtor has an ongoing domestic support obligation, and that he has not provided evidence that he is current or that the section 1129(a)(14) requirement is inapplicable in his case.

>January 2011: $687.50, listed as payment for "Child Support"; $1,250, listed as payment for "Child Support"
>
>February 2011: no payments
>
>March 2011: no payments
>
>April 2011: $320.05, listed as payment for "Child Support/College Visit"; $1,250, listed as payment for "Child Support"

Debtor's Schedules and testimony indicate that his monthly child support obligation is $1,250 per month. Over the last five months, this would equal $7,500. The payments listed above, excluding birthday gift expenses, equal $5,240 in payments. Debtor's testimony was that he is obligated to pay child support, but Debtor failed to present any evidence proving that he is current on his child support obligations. It appears that since the conversion of his case, Debtor has failed to make all child support payments due. As a result, Debtor does not meet the requirement of section 1129(a)(14) and his Plan cannot be confirmed.

Second, Debtor has not shown that he meets the requirement of section 1129(a)(12) that all fees payable under 28 U.S.C. § 1930 have been paid. The fees due to UST are one such fee. *See* 28 U.S.C. § 1930(a)(6). Debtor testified that he mailed a check in payment of his quarterly fees for two quarters several days before the confirmation hearing. However, UST indicated that the payment had not been received and posted as of the morning of the confirmation hearing. An otherwise unsupported claim that payment has been placed in the mail is not sufficient to show compliance with section 1129(a)(12), especially in the face of evidence that more than one payment is outstanding.

Finally, Debtor's Plan also has numerous feasibility problems, relating to Debtor's domestic support arrearages, unfiled tax returns, and his personal expenses. First, Debtor's Schedules indicate that Debtor owes $7,500 in domestic support arrearages to his ex-wife.

Section 507(a)(1)(A) provides that allowed unsecured claims for domestic support obligations owed on the date of the filing of the petition are first priority unsecured claims. As such, the arrearages are apparently provided for in Class One of Debtor's Plan, which provides that "each holder of a Class One Priority claim will be paid in full, in cash, upon the later of the effective date of this Plan as defined in Article VII, or the date on which such claim is allowed by a final non-appealable order." Debtor's Plan, docket no. 104, pg. 3. It appears that Debtor's ex-wife has not filed a proof of claim. However, section 1111(a) provides that in a chapter 11 case any scheduled claim or interest is deemed filed under section 501, unless it is scheduled as disputed, contingent, or unliquidated, and section 502(a) states that a claim filed under section 501 is deemed allowed unless a party in interest objects. Fed. R. Bankr. P. 3003 also provides that the scheduling of a debt constitutes prima facie evidence of the validity and amount of that debt, and that it is not necessary for a scheduled creditor, unless noted as disputed, contingent, or unliquidated, to file a proof of claim in a chapter 11 case. Fed. R. Bankr. P. 3003(b)(1).

Debtor's ex-wife is listed on Schedule E, and her claim is not listed as disputed, contingent, or unliquidated. Additionally, there has been no objection to her claim and no dispute regarding the validity or amount of the arrearages. As a result, her $7,500 claim is deemed filed and allowed. Section 1129(a)(9) provides that domestic support claims must be paid, depending on whether they have voted to accept the plan, either "deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; . . . or cash on the effective date of the plan equal to the allowed amount of such claim." To the extent that Debtor's Plan treats his ex-wife's claim differently by attempting to alter the time of payment or claims allowance procedure, it violates section 1129 and cannot be confirmed. In addition, there is no evidence that Debtor has $7,500 which he could use to pay his ex-wife's claim, nor is there

evidence that he can quickly obtain these funds to pay the claim. Debtor's Plan is not feasible due to Debtor's apparent inability to pay his ex-wife's Class One priority claim.

In addition, Debtor testified that he has not filed tax returns for four or five years. He stated he did not file returns because he did not have any income. However, Debtor began his production company in September 2010; this means that Debtor had at least some income in 2010. Debtor stated that he is currently working on his 2010 tax returns with his accountant and that they would be filed "by the end of the month." However, without filed tax returns, the Court is unable to determine Debtor's income and potential tax liability, creating additional uncertainty with respect to the feasibility of Debtor's Plan. The Court also notes that the South Carolina Department of Revenue has filed a proof of claim for 2009 priority taxes of an undetermined amount; the amount is undetermined due to Debtor's failure to file his tax returns. Debtor's Plan, however, states that there are no priority tax claims; therefore, it appears that Debtor has ignored this proof of claim and has not made provision to pay this debt through his Plan once his returns are filed and his liability is established.

Debtor has failed to paint a clear picture of his financial situation. Debtor has failed to list the majority of his personal expenses on his monthly operating reports and could not even articulate the amount of those ongoing expenses at the confirmation hearing. Debtor testified that Judith Rickman, his former business partner and attorney, made some of his adequate protection payments to his mortgage creditor during the chapter 11 case, but did not elaborate on the frequency and amount of these payments, and additionally indicated that she did not intend to make such payments in the future. It was unclear whether these were the only payments made by Ms. Rickman on Debtor's behalf.[4] It also is not clear whether these payments were gifts or

---

[4] Debtor's Amended Statement of Financial Affairs filed December 14, 2010 lists income received from Ms. Rickman of $28,000 in 2008, $36,000 in 2009, and $8,000 in 2010. Debtor's Schedules and Plan also indicate that

loans to Debtor, but the Court notes that no disclosure or approval of loans has occurred in this case. Debtor used three bank accounts during the pendency of his case and often failed to attach bank statements to his monthly operating reports, sometimes failing to include statements from any of the three accounts. UST presented evidence that over the course of the monthly operating reports, cash in the amount of $7,200 was spent or otherwise disposed of, but exactly how it was spent or disposed of is unclear. These circumstances present the Court with further justification for finding that Debtor's Plan is not confirmable.

Debtor argues that the Court's determination of the feasibility of the plan should not rest on his past but should focus on his projections of future business success. Clearly, no chapter 11 plan would ever be confirmed if a debtor's past financial failings circumscribed any projection of future profitability. At the same time, Debtor's past, as well as his behavior during the chapter 11 case, is some evidence of future profitability. Debtor has the burden of proof on all requirements for confirmation. While his past business failings are of little relevance, especially since Debtor is involved in a new business, his ongoing financial performance, coupled with missing information concerning taxes, domestic support, and personal expenses, leaves the Court without a foundation upon which to rest a finding of feasibility.

## CONCLUSION

Debtor is not current on his ongoing domestic support payments and therefore cannot meet the requirement of section 1129(a)(14). Debtor has not shown that quarterly fees due to UST have actually been paid. Additionally, Debtor has not met his burden of showing feasibility. As a result, Debtor's Plan does not meet the requirements of section 1129 and confirmation is denied. A previous proposed plan was denied confirmation by this Court on

---

Debtor received a personal loan from Ms. Rickman in the amount of $125,000 and that Ms. Rickman has agreed to forgive this debt.

March 16, 2011.  While Debtor may propose yet another plan, the Court intends to schedule a hearing on whether Debtor's case should be dismissed for failure to propose a confirmable plan.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**05/12/2011**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 05/12/2011